# EXHIBIT 'A'

**AGREEMENT TO AUCTION ASSETS**
**Ultra Tab**
**March 30, 2021**

This Agreement ("Agreement") outlines the principal terms and conditions upon which Union Standard Equipment (the "Sellers") will offer for sale by auction ("Sale") certain assets owned by Ultra Tab ("Ultra Tab") all of which are located at the Ultra Tab facility at 50 Toc Drive, Highland, NY known as the Premises ("Premises").

1. **Assets and Sale**

*1.1* Sellers will offer for sale certain processing, packaging, laboratory machines plus rolling stock and other misc items (the "Assets") as identified on the attached Schedule A.

1.2 ULTRA TAB will indemnify, defend and hold Sellers harmless with respect to all costs, expenses, liabilities, damages or claims, including without limitation reasonable attorneys' fees, asserted by any person, entity or governmental agency against Sellers or any of Sellers' agents, employees, partners or affiliates directly or indirectly relating in any manner to any hazardous materials. Sellers shall in no event be obligated to sell any Asset which contains any hazardous materials, or to incur any costs or expenses relating in any manner, either directly or indirectly, to any hazardous materials or toxic materials, or any materials which may be regulated as such under applicable laws, rules or regulations.

1.3 All sales by Sellers will be "as is", "where is", without representation or warranty, either expressed or implied, of any kind. Company warrants that they own, and at the time of sale, will transfer title to and possession of the Assets to the buyers, all free and clear of all liens, interests, encumbrances and claims. If, in the opinion of the Sellers, certain assets do not achieve a reasonable return at the auction, Sellers may elect not to sell the asset(s), and if requested by ULTRA TAB, continue the marketing of same under the terms of this agreement.

1.4 All parties agree that no Assets will be removed or sold prior to the sale except upon written consent from both Sellers and ULTRA TAB. The value of Assets removed, and/or proceeds of Assets sold prior to the Sale shall be considered as part of the Sale and subject to the terms and conditions described in Paragraph 2 below.

2. **Sellers' Fees and Expenses**

2.1 Sellers will charge Ultra Tab a 10% commission based on the hammer price of all sold items. Sell will also receive an industry standard buyer's premium ("Buyer's

Premium") of Eighteen Percent (18%) will be levied on all items sold. Three (3%) of the Buyer's Premium shall be collected by Auctioneer and delivered to the auction hosting platform provider and Fifteen Percent (15%) shall be retained by Auctioneer. The Buyer's Premium is added to the 'hammer price' and is paid by the winning bidder and is not included as part of the Gross Sale Proceeds. The Buyer's Premium is added to the final sale price, is only paid by successful buyers, and is collected outside the Gross Sale Proceeds. Gross Sale Proceeds means the aggregate amount collected from buyers (either from Pre-Auction, the Auction or Post- Auction sales) for the Sale of the Assets, and only include payments that clear Sellers' bank. Gross Sale Proceeds does not include any buyer's premium, sales tax, general excise tax, goods and services tax or any similar tax

3. **Auction Schedule** The sale will be held online only with bids opening on a pre-determined schedule based upon the shuttering of the Premises. The time frame to prepare the sale and list online is approximately 5 days. The online sale will remain open for approximately two weeks.

4. **Occupancy Rights**. In order to enable Sellers to conduct the sale, ULTRA TAB shall allow Sellers to use the Premises commencing the date of this Agreement, at no cost or expense to Sellers, for the purposes of preparing, tagging, photographing and cataloging the Assets, previewing the Assets and conducting the Sale. ULTRA TAB will ensure that utilities are provided to the Premises for a period from the date of this Agreement through conclusion of the auction and removal of the sold Assets.

5. **Removal of Assets** All Assets will be sold "AS IS" and "WHERE IS", with all dismantling and loading costs at the sole expense of the auction buyers. Sellers estimate that it may take up to 30 days to complete the removal of the sold assets. The sold equipment Assets shall only be removed from the first connection point nearest the equipment, and all utility lines shall be left in place. Sellers shall supervise the removal of the sold Assets to the extent reasonably possible immediately following the Auction, and may not be responsible for the removal of unsold Assets.

6. **Conditions** In addition to any other conditions set forth herein, Sellers' obligations under this Agreement are also conditioned on (i) ULTRA TAB's compliance with all federal and local laws, rules and regulations applicable to this transaction, (ii) title to and possession of all of the Assets being available for sale as contemplated by this Agreement, and (iii) Sellers being allowed to utilize the Premises and to conduct the Sale as contemplated by this Agreement.

7. **Payment of Taxes** Sellers agrees to collect applicable sales taxes from purchasers and remit such taxes to the appropriate governmental authorities.

8. **Insurance** Sellers will deliver to ULTRA TAB, at or before the commencement of the Auction, evidence of public liability insurance, with terms reasonably acceptable to ULTRA TAB, in the sum of One Million Dollars ($1,000,000.00).

**9. Attorneys' Fees** In the event of any dispute arising out of this Agreement, the prevailing party shall be entitled to recover from the other all costs and expenses, including reasonable attorneys' fees.

**10. Arbitration** Any dispute or controversy arising out of or relating to this Agreement or any interpretation, construction, performance or breach of this Agreement, including fraud in the inducement, shall be resolved by final and binding arbitration conducted by a retired judge with the Judicial Arbitration and Mediation Service ("JAMS"), in accordance with the rules of JAMS then in effect. Such proceeding shall be conducted at the offices of JAMS to be agreed upon by the parties, before a single arbitrator to be agreed upon by the parties. The decision of the arbitrator shall be final, conclusive and binding on the parties. Judgement may be entered on the arbitrator's decision in any court having jurisdiction.

**11. Governing Law** This Agreement shall be governed by, construed and enforced in accordance with the Laws of the State of New York.

**12. Entire Agreement** This Agreement constitutes the entire agreement among the parties with respect to the subject matter hereof. No changes, modification, or additions to this Agreement shall be valid unless the same is in writing and signed by Sellers and ULTRA TAB.

13. **Counterparts** This Agreement may be executed in duplicate originals, each of which is equally admissible in evidence and each shall fully bind the parties who have executed this Agreement. For purposes of this Agreement, facsimile signatures shall be sufficient to bind the parties.

**14. Authorization** Each party represents and warrants that it has full power, and is fully authorized, to enter into this Agreement, and that this Agreement constitutes a valid and binding obligation of such party.

Execution of this agreement shall constitute acceptance, by all parties, of the above stated terms and conditions

**Union Standard Equipment Company**

Date: ______________________________ By: ______________________________
John Greenberg, Co-President

**ULTRA TAB**

Date: ______________________________ By: ______________________________
Ultra Tab agent